UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

Eastern District of Kentucky
FILED
JUN 27 2006
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 05-338-KSF

ROGER LEE HOLSEY, JR.,                                                       PETITIONER

V.                      **PROPOSED FINDINGS OF FACT
                       AND RECOMMENDATION**

KENTUCKY PAROLE BOARD,                                RESPONDENT

\* \* \* \* \*

## I. INTRODUCTION

On August 9, 2005, petitioner Roger Lee Holsey, Jr., *pro se*, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, concerning his conviction in Fayette Circuit Court on or about November 12, 1999. On November 21, 2005, the Respondent filed its answer to the petition and moved for summary judgment[1] [DE #7]. In response thereto, on December 12, 2005, petitioner filed a cross-motion for summary judgment [DE #8], to which respondent has filed a response [DE #9]. Thus, this matter is ripe for review.

In accordance with local practice, this matter was referred to the undersigned Magistrate Judge for consideration pursuant to 28 U.S.C. § 636(b). See Rule 10, Rules Governing Section 2254 Cases in the United States District Courts; Fed.R.Civ.P. 72(b).

## II. DISCUSSION

### A.    Standard of Review

This is a pro se petition, and, as such, the Magistrate Judge is mindful that it is held to less stringent standards than those drafted by attorneys. See Cruz v. Beto, 405 U.S. 319 (1972); Haines

---

[1] Along with its motion for summary judgment, the Respondent also filed his Rule 5 attachments, consisting of an 87-page Appendix (hereafter "A") of (1) appellate briefs and the appellate decision from the Kentucky Supreme Court concerning Petitioner's direct appeal, (2) appellate briefs filed in the Kentucky Court of Appeals concerning Petitioner's RCr 11.42 motion, (3) decisions by the Kentucky Supreme Court and the Kentucky Court of Appeals concerning Petitioner's RCr 11.42 motions, and (4) portions of the State Court Record in the Fayette Circuit Court.

v. Kerner, 404 U.S. 519 (1972). The allegations in pro se petitions must be taken as true and construed in favor of the petitioner. See Malone v. Colyer, 710 F.2d 258, 260 (6th Cir. 1983).

### B. Prerequisites for federal habeas corpus review

In order to grant relief in a proceeding pursuant to 28 U.S.C. § 2254, the court must find that certain prerequisites for granting relief are present. If these prerequisites are not met, the court must dismiss the petition without addressing its merits. Specifically, the court must find that: (1) petitioner is in "custody"; (2) petitioner has exhausted the remedies available to him in state court; and (3) petitioner did not waive or forfeit the right to present a particular issue by failing to follow state court rules to ensure that the state courts would review that issue on appeal.

At the time petitioner filed this action, he had been released from incarceration, but was on parole. With petitioner still being on parole, the first prerequisite is satisfied. In the discussion below, the Magistrate Judge will determine whether the remaining two prerequisites are satisfied.

### C. Factual and Procedural History

On March 15, 1999, petitioner and co-defendants Theodore Dawon Sharp and Kevin William Shannon were indicted in an eleven-count indictment by a grand jury of the Fayette Circuit Court, charging them with various offenses, involving burglary, theft, receiving stolen property, possession of marijuana, and possession of drug paraphernalia. Petitioner was charged with the following offenses:

> Count 1: On or about the 6th day of February, 1999, in Fayette County, Kentucky, the above named Defendants threatened the use of physical force, while armed with a firearm, in the course of committing a theft from Tom Overby;
>
> Count 2: On or about the 6th day of February, 1999, in Fayette County, Kentucky, the above named Defendants threatened the use of physical force, while armed with a firearm, in the course of committing a theft from Steve Ethington;
>
> Count 3: On or about the 6th day of February, 1999, in Fayette County, Kentucky, the above named Defendants unlawfully entered the residence of David White, with intent to commit a crime, and while armed with a firearm;
>
> . . .

Count 8: On or about the 8th day of February, 1999, in Fayette County, Kentucky, the above named Defendant, Roger Lee Holsey, possessed a vehicle of a value of $300 or more, stolen from Tom Overby;

Count 9: On or about the 9th day of February, 1999, in Fayette County, Kentucky, the above named Defendants, Roger Lee Holsey and Theodore Dawon Sharp, threatened the use of physical force, while armed with a firearm, in the course of committing a theft from Terry Agee;

Count 10: On or about the 11th day of February, 1999, in Fayette County, Kentucky, the above named Defendant, Roger Lee Holsey, possessed marijuana;

Count 11: On or about the 11th day of February, 1999, in Fayette County, Kentucky, the above named Defendant, Roger Lee Holsey, possessed drug paraphernalia;

against the peace and dignity of the Commonwealth of Kentucky.

See Exhibits to petitioner's Petition.

Petitioner pled not guilty to these charges, proceeded to trial, was found guilty on Counts 1, 2, 3, 10, and 11 of the indictment and was acquitted on Counts 8 and 9 of the indictment. On November 12, 1999, the trial court sentenced petitioner to a ten-year sentence on Count 1, a ten-year sentence on Count 2, a ten-year sentence on Count 3, a 12-month sentence and a $500.00 fine on Count 10, and a $250.00 fine on Count 11. The trial court further ordered that the ten-year sentence on Count 1 and the ten-year sentence on Count 2 run consecutively with each other and concurrently with the ten-year sentence on Count 3, resulting in a total sentence of twenty (20) years. See Final Judgment, Sentence of Imprisonment (Exhibit to Petition).

Petitioner appealed his conviction to the Kentucky Supreme Court. In an unpublished opinion rendered on June 14, 2001, the Kentucky Supreme Court affirmed petitioner's conviction. See Roger Lee Holsey, Jr. v. Commonwealth of Kentucky, Slip Opinion No. 1999-SC-1088-MR (unpublished) - A80-A86.

Thereafter, on November 29, 2001, petitioner, pro se, moved the trial court, pursuant to RCr 11.42 to vacate, set aside or correct sentence. In an Opinion and Order entered on December 4, 2002, the trial court denied all claims raised in petitioner's RCr 11.42 motion except for petitioner's claim that his counsel was ineffective for failing to raise a claim of selective prosecution in that he, as a black individual was prosecuted while others who were Caucasian and also involved in the

events leading to this prosecution, were not charged in the indictment. The trial court heard evidence on December 12, 2002, on petitioner's claim of selective prosecution, and in an <u>Opinion and Order</u> entered on December 18, 2002, the trial court denied petitioner's claim that he had been selectively prosecuted and that his counsel was ineffective for failing to raise this claim at trial. *See* A69 - A79.

Petitioner appealed the denial of his RCr 11.42 motion to the Kentucky Court of Appeals. In an unpublished opinion rendered on December 17, 2004, the Kentucky Court of Appeals affirmed the trial court's denial of petitioner's RCr 11.42 motion. See <u>Roger Lee Holsey, Jr. v. Commonwealth of Kentucky</u>, Slip Opinion No. 2003-CA-000018-MR (unpublished) (A02-A26). On February 18, 2005, the Kentucky Supreme Court denied petitioner's motion for an enlargement of time in which to file a motion for discretionary review of the decision of the Kentucky Court of Appeals affirming the trial court's denial of petitioner's RCr 11.42 motion (A87), and on March 17, 2005, the Kentucky Supreme Court denied petitioner's motion for reconsideration of the denial of his motion for an enlargement of time to file a motion for discretionary review (A01).

Petitioner filed his federal habeas petition on August 9, 2005.

### D. Petitioner's claims

In the present action, petitioner asserts that (1) there was a fatal variance between the indictment and the trial court's instructions to the jury concerning "aiding and abetting," resulting in an unlawful constructive amendment to the indictment and that his counsel was ineffective for failing to object to the trial court's erroneous jury instructions; (2) he was the victim of unlawful selective prosecution in that he and two other African Americans were charged in the indictment while two Caucasians also involved were not charged with any offense; (3) the trial court erred in denying his motion for a directed verdict; and (4) the trial court abused its discretion and denied him his right to jury sentencing when the trial court did not follow the jury's recommendation that all sentences run concurrently.

In response to the habeas petition, the Respondent submits that petitioner's claims raised therein are without merit; therefore, Respondent argues that it is entitled to summary judgment. In

4

response to Respondent's motion for summary judgment, petitioner has also moved for summary judgment.

## Applicable law

In considering Petitioner's claims, the court is cognizant that the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 prohibits federal courts from granting writs of habeas corpus on claims previously adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (d)(2).

In *Harris v. Stovall*, 212 F.3d 940 (6th Cir. 2000), the Sixth Circuit recognized that by reason of the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495 (2000), issued on April 18, 2000, the standard of review that a federal habeas court must apply under § 2254(d) had been changed and that *Nevers v. Killinger*, 169 F.2d 352 (6th Cir. 1999), had effectively been overruled. Elaborating, the court in *Harris v. Stovall, supra*, explained:

> On April 18, 2000, the Supreme Court issued a decision in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), setting forth the standard of review that a federal habeas court must apply under § 2254(d). The Court held that a decision of the state court is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* at 1523, 120 S.Ct. 1495. The Court further held that an "unreasonable application" occurs when "the state court identifies the correct legal principle from this Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 1522, 120 S.Ct. 1495.
>
> In this case, the district court referred to our holding in *Harpster*, which simply noted the differing interpretations of § 2254(d) developing in our sister circuits, but found that the standard under § 2254(d) had not been met. See *Harpster*, 128 F.3d at 326-27. Subsequently, in *Nevers v. Killinger*, 169 F.3d 352 (6th Cir.), cert. denied, 527 U.S. 1004, 119 S.Ct. 2340, 144 L.Ed.2d 237 (1999), we found it appropriate to rely on the Fifth Circuit's "debatable among reasonable jurists" standard in *Drinkard v. Johnson*, 97 F.3d 751 (5th Cir.1996), combined with the First

5

>Circuit's standard of "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes," set forth in *O'Brien v. Dubois*, 145 F.3d 16 (1st Cir.1998). *See Nevers*, 169 F.3d at 361-62. Later, we reaffirmed this approach in *Maurino v. Johnson*, 210 F.3d 638, 643-44 (6th Cir.2000). However, the Supreme Court in *Williams* found that the Fourth Circuit's test--that a state court's application of federal law was "unreasonable" only if the court had applied federal law in a manner that reasonable jurists would all agree was unreasonable--was erroneously subjective, as the inquiry should be objective. The Court expressly disavowed the Fifth Circuit's "reasonable jurist" standard set forth in *Drinkard*. In light of the Supreme Court's decision in *Williams*, we find that *Nevers* and *Maurino* no longer correctly state the law on the issue of the appropriate standard under 28 U.S.C. § 2254(d). We must therefore rely solely on the Supreme Court's decision in *Williams* for the appropriate standard under § 2254(d).

*Harris v. Stovall, supra*, 212 F.3d at 942-43.

With this standard in mind, it is necessary to review the decision of the Kentucky Supreme Court on direct appeal and the decision of the Kentucky Court of Appeals on collateral review to determine if those adjudications:

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (d)(2).

### 1. Constructive amendment to the indictment

Petitioner claims that there was a fatal variance between the indictment and the trial court's instructions to the jury concerning "aiding and abetting," resulting in an unlawful constructive amendment to the indictment and that his counsel was ineffective for failing to object to the trial court's erroneous jury instructions. As grounds for this claim, petitioner points out that he was charged as a principal in the robbery and burglary offenses, but that during closing argument, the prosecutor argued to the jury that the Commonwealth was seeking petitioner's conviction of these offenses as an "aider and abettor" in the burglary and robbery offenses even though petitioner may not have been a principal in the commission of these offenses. The gist of this claim is that while petitioner had prepared to defend against the robbery and burglary charges as a principal, he was

caught off guard by the Commonwealth's "aiding and abetting" argument made late in the trial and was then unable to prepare a defense thereto. Petitioner also claims that his counsel was ineffective for failing to object to the trial court's jury instructions concerning "aiding and abetting."

In considering this claim on appeal, the Kentucky Court of Appeals analyzed this claim as follows:

> There are two primary types of modifications to indictments: amendments and variances. An amendment involves a change, whether literal or in effect, in the charging terms of the indictment. A variance from the indictment occurs when the charging terms are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment. Between these two classifications lies a more subtle modification referred to as a constructive amendment or sometimes a fatal variance. Variance can rise to the level of a constructive amendment when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions that so modify essential elements of the offense charged that there is a substantial likelihood the defendant may have been convicted of an offense other than that charged in the indictment. The distinction between a variance and an amendment has been called "sketchy" and "not always precise," but the consequences of each are significantly different. "A variance will not constitute reversible error unless 'substantial rights' of the defendant have been affected, while a constructive amendment is *per se* prejudicial.
> Section 12 of the Kentucky Constitution creates a substantive due process constitutional right to a grand jury indictment for prosecution on a felony offense. The purpose of an indictment is to inform the accused of the nature of the charged crime to allow the accused to prepare a defense and prevent further prosecutions or retrial on the same offenses. The adoption of the notice theory of pleading eliminated the need for precise details in an indictment so that an indictment is sufficient if it fairly informs the accused of the nature of the charge without detailing the formerly essential factual elements and does not mislead him. Under notice pleading, if a defendant needs additional factual information concerning the details of a charge, this information is supplied in a bill of particulars.
> Kentucky courts have long held that where two or more persons are jointly indicted as principals, any one of them, although tried separately, may be convicted of complicity, or aiding and abetting, even though the indictment does not charge aiding and abetting. In Broughton v. Commonwealth, the court held that where a defendant is jointly indicted as a principal and the evidence conclusively indicated that he acted solely as an aider or abettor, the trial court should instruct the jury only on the complicity theory in a separate trial of the defendant. In Carroll v. Commonwealth, the court stated that evidence at trial showing a defendant acted as an aider and abettor did not constitute a "fatal variance" from a joint indictment naming the defendant as principals [sic]. In Neal v. Commonwealth, the court justified this approach based on the lack of prejudice. "To indict both the principal and the aider and abettor as principals gives notice that the Commonwealth can or will attempt to prove that one did the act and the other aided and abetted.
> Holsey contends that the principle allowing persons jointly indicted as principals to be convicted as aiders or abettors should be reconsidered in light of *dictum* in the case of Houston v. Commonwealth. In Houston, the court held that the defendant, who was convicted as a principal of trafficking in cocaine, was not entitled to a jury

7

instruction on criminal facilitation as a lesser-included offense. The court said that facilitation is a lesser-included offense of complicity but not a primary object offense. The court also stated, "We need not decide whether, under Kentucky law, a conviction of complicity can be obtained under an indictment charging a defendant only as a principal, for Appellant did not request an instruction on that offense." As Holsey concedes, this statement recognizes that any decision on the issue of a variance between an indictment of a defendant as a principal and conviction for complicity was unnecessary and would be *dictum*. One simply cannot draw a negative inference prohibiting conviction for complicity following indictments as a principal from this statement alone. In addition, the statement does not address the situation involving joint indictments.

Until the Kentucky Supreme Court speaks more definitively on the issue, we are bound to follow the existing law. Holsey also suggests precedential value of Neal is diminished because it is "nearly fifty (50) years old." This Court does not have authority to declare that decisions of the Kentucky Supreme Court or its predecessor court have been implicitly overruled because of age.

In addition, Holsey had notice prior to trial that the Commonwealth would pursue an accomplice theory with respect to his participation in the robbery/burglary on Reed Lane. The prosecution provided police reports and interviews with various persons including Kevin Shannon and Regan Lancaster consistent with the Commonwealth's proof at trial indicating that Holsey did not enter the residence. Consequently, Holsey was not surprised by an alleged variance between the indictment and the evidence at trial. Given the state of the current law, Holsey has not shown that defense counsel's failure to object to the jury instructions on the grounds that they constituted a constructive amendment or improper variance was unreasonable or deficient performance or that he suffered actual prejudice because the jury instructions were not erroneous as a matter of law. (footnotes omitted).

Roger Lee Holsey, Jr. v. Commonwealth of Kentucky, No. 2003-CA-000018-MR, (unpublished) pp. 12-17 (A13-A18).

In petitioner's case, he was the only defendant charged in the indictment to go to trial; his two co-defendants, entered into plea agreements with the Commonwealth and did not go to trial. Thus, petitioner was charged as a principal, tried separately from his co-defendants, with no charge of aiding or abetting, and was convicted of aiding and abetting. The long-standing rule in Kentucky dating back to 1931 in *Neal v. Commonwealth, supra,* noted above is that when two or more defendants are indicted jointly as principals, with no charge of aiding and abetting (as in petitioner's case), either may be convicted of aiding and abetting. Therefore, the Kentucky Court of Appeals correctly discerned that the trial court properly gave an "aiding and abetting" instruction to the jury, and, contrary to petitioner's argument, the "aiding and abetting" jury instruction was not tantamount to a constructive amendment of the indictment, since the rule in Kentucky is that one may be charged

8

as principal in the commission of an offense, but ultimately convicted as an "aider and abettor" without having been charged as an "aider and abettor" in the indictment. Additionally, petitioner has not shown that his counsel was ineffective for not objecting to this jury instruction, since counsel could not be deemed ineffective for not objecting to a lawful jury instruction.

Consequently, the Magistrate Judge concludes that petitioner has not established that the decision of the Kentucky Court of Appeals in resolving the constructive amendment issue was a decision (a) that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (b) that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. For these reasons, the Magistrate Judge further concludes that petitioner is not entitled to federal habeas relief on this claim.

**2.      Selective prosecution based on race**

Petitioner also claims that he was the victim of unlawful selective prosecution in that he and two other African Americans were charged in the indictment while two Caucasians also involved were not charged with any offense and that his counsel was ineffective for not pursuing a claim of selective prosecution.

This claim was raised in petitioner's RCr 11.42 motion, and in considering this issue, the trial court appointed counsel for defendant and conducted an evidentiary hearing, but ultimately concluded that petitioner's claim of selective prosecution was without merit. In considering this claim on the appeal of the denial of petitioner's RCr 11.42 motion, the Kentucky Court of Appeals analyzed this claim as follows:

> A selective prosecution claim is based on the Fifth and Fourteenth Amendment right to equal protection. The decision whether to prosecute generally rests within the broad discretion of the prosecutor. Although broad prosecutorial discretion is not unfettered and is subject to constitutional restraints prohibiting prosecution based on race, religion, or the exercise of protected statutory and constitutional rights. In <u>United States v. Armstrong</u>, the Supreme Court held that a person claiming selective prosecution must show that the prosecutorial decision had both a discriminatory effect and was motivated by a discriminatory purpose. Given the presumption of regularity afforded prosecutorial decisions, both elements must be proven by clear and convincing evidence. The discriminatory effect prong requires a showing that

9

similarly situated individuals of a different classification were not prosecuted. In elaborating on the first prong of the <u>Armstrong</u> test, the Eleventh Circuit Court of Appeals in <u>United States v. Smith</u>, addressed the analysis for determining "similarly situated" persons, stating:

> One who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan and against whom the evidence was as strong or stronger than that against the defendant.

The second prong involving discriminatory purpose requires more than intent as awareness of consequences; it requires a showing that the prosecutor "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Where direct evidence of discriminatory purpose is unavailable, a court may review other factors such as disparate impact, historical background, and specific events leading up to the challenged decision.

Holsey maintains that he was a victim of selective prosecution based on race because he is part African-American; while Regan Lancaster and Chad Bishop are white. The Commonwealth asserts it had insufficient evidence to prosecute Chad Bishop. Detective Schoonover testified at the RCr 11.42 hearing the only person that implicated Bishop's possible involvement in the incident was Sharp, who told police that Bishop was in the white Maxima on the trip to Reed Lane.

Detective Schoonover discounted Sharp's statement for various reasons, including Shannon's failure to confirm this fact. Regan Lancaster twice specifically denied that Bishop was in the vehicle in interviews with the police. The police and prosecutor both indicated they were surprised when Lancaster testified at the trial that Bishop was in the vehicle. Detective Schoonover also testified that the police had surreptitiously recorded a telephone call from Shannon, who was being held at the jail on unrelated charges at the time, to Sharp, who was at Holsey's apartment. Chad Bishop initially answered the phone and engaged in a short conversation with Shannon during which Bishop stated that "they" should have gone to the Millennium nightclub with him on the night of the robbery. Shannon responded, "that's right."

The police first learned of Regan Lancaster's involvement through interviews with Shannon and Sharp. Shannon initially told police that Lancaster was unaware of the robbery plan, and he merely asked her to knock on the door of the residence and ask for his girlfriend. Lancaster also denied knowing of a plan to commit a robbery beforehand. Lancaster later, however, admitted receiving some cash from Shannon when they returned to the apartment after the robbery. Nevertheless, Detective Schoonover stated that Lancaster was not charged because she was less culpable than the three defendants and she agreed to testify for the prosecution against the others.

On the other hand, the Commonwealth points to several facts implicating Holsey in the incident. First, Shannon, Sharp, and Lancaster indicated that Holsey drove the white Maxima the night of the robbery. Shannon told police that Holsey was aware of the plan, supplied information about the persons at the residence, and provided the shotgun he used in the robbery. Ashley Curtis said that Holsey knew the persons at

10

> the residence and had spoken with her on the telephone only a few hours before the robbery. Several items connected with the robbery were recovered from Holsey's bedroom and vehicle, including a ski mask, black leather gloves, a .357 Ruger handgun, a blue bandana, a pair of ski goggles, and a shotgun. Ethington also identified Holsey as the person driving Tom Overby's red BMW the night after the robbery. In his conversations with the police, Holsey denied any involvement in the robbery and denied even being the white Maxima.
>
> We believe that Holsey has not established a legitimate claim of selective prosecution. The Commonwealth has presented evidence that the evidence against Holsey was stronger than that against Chad Bishop and Regan Lancaster. The Commonwealth also presented legitimate non-racial reasons for prosecuting Holsey, as opposed to Chad Bishop and Regan Lancaster, rather than because of race. The fact that Shannon and Sharp, who were also African-American, were prosecuted as well does not indicate a discriminatory pattern or policy because they we both admitted acting as principals in the crimes. Holsey has not satisfied his burden by showing by clear and convincing evidence both discriminatory effect and discriminatory purpose sufficient to support a constitutional claim of selective prosecution. As a result, Holsey has not demonstrated actual prejudice resulting from ineffective assistance of counsel in that defense counsel's failure to pursue the claim of selective prosecution would have affected the outcome of the prosecution against him. (footnotes omitted).

Roger Lee Holsey, Jr. v. Commonwealth of Kentucky, No. 2003-CA-000018-MR, (unpublished) pp. 18-23 (A19-A24).

In its opinion affirming the trial court's denial of petitioner's RCr 11.42 motion, the Kentucky Court of Appeals specifically analyzed the issue of selective prosecution under federal law. Citing *Wayne v. United States*, 470 U.S. 598 (1985), the Kentucky Court of Appeals first pointed out that, "the decision whether to prosecute generally rests within the broad discretion of the prosecutor." Roger Lee Holsey, Jr. v. Commonwealth of Kentucky, No. 2003-CA-000018-MR, (unpublished) p. 18 (A19). The Kentucky Court of Appeals then identified the applicable standard when considering a selective prosecution claim by stating, "that a person claiming selective prosecution must show that the prosecutorial decision had both a discriminatory effect and was motivated by a discriminatory purpose." (*Id.* at 19); citing *United States v. Armstrong*, 517 U.S. 456, 465 (1996). After discussing and explaining this two-pronged standard, the Kentucky Court of Appeals resolved petitioner's claim by thoroughly sifting through the relevant facts and concluded, based on the applicable law and relevant facts, that petitioner had not satisfied his burden of showing

11

by clear and convincing evidence both discriminatory effect and discriminatory purpose sufficient to support a constitutional claim of selective prosecution.

Consequently, the Magistrate Judge concludes that petitioner has not established that the decision of the Kentucky Court of Appeals in resolving the selective prosecution issue was a decision (a) that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (b) that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. For these reasons, the Magistrate Judge further concludes that petitioner is not entitled to federal habeas relief on this claim.

### 3. Trial court's denial of motion for directed verdict

In his direct appeal, petitioner claimed that the trial court erred in denying his motion for a directed verdict in that there was insufficient evidence to support his conviction on these charges. Petitioner revisits that claim in the present action.

In evaluating this claim on direct appeal, the Kentucky Supreme Court analyzed this claim as follows:

> The standard for appellate review of a denial of a motion for a directed verdict based on insufficient evidence is, "if from the totality of the evidence the judge can conclude that reasonable minds might fairly find guilt beyond a reasonable doubt, then the evidence is sufficient to allow the case to go to the jury even though it is circumstantial." Commonwealth v. Sawhill, Ky., 660 S.W.2d 3, 4 (1983).
> In light of these standards, we think that the trial court's denial of a directed verdict should be affirmed. There is testimonial evidence that Holsey drove the getaway car from (and perhaps to) the robbery and burglary and that he gave Kevin Shannon the shotgun used in the commission of these crimes. The Commonwealth also presented physical, albeit circumstantial, evidence of the crimes which was found in Holsey's bedroom. Three witnesses to the robbery and burglary testified that two men entered David White's house, and that each wore a black ski mask and black gloves, while one wore goggles and a blue and white bandanna. During the search, the police found the following items in Holsey's bedroom: a black ski mask, a blue and white bandanna, a black leather gloves, several twelve-gauge Remington shotgun shells and a .357 Ruger revolver. This same Ruger revolver had previously been in the BMW that was linked to the keys taken at White's house on February 6. In addition, a pair of goggles and a twelve-gauge shotgun were found during the search of Holsey's vehicle.
> The totality of this evidence, viewed in the light most favorable to the Commonwealth, is sufficient such that a judge could conclude that reasonable minds might fairly find guilt beyond a reasonable doubt even though much of the evidence

12

is circumstantial. More specifically, there is enough evidence, especially the physical evidence from the crimes found in Holsey's possession, that fairly implicates him in the commission of the crimes.

Roger Lee Holsey, Jr. v. Commonwealth of Kentucky, 1999-SC-1088-MR (unpublished), pp. 5-6 (A84-A85).

In this instance, petitioner is requesting the federal habeas court to also review the sufficiency of the evidence, which essentially means that petitioner is requesting the federal habeas court to find that the Kentucky Supreme Court incorrectly identified the elements and proof necessary to convict petitioner under Kentucky law. However, findings of fact made by the state court are entitled to a presumption of correctness under 28 U.S.C. § 2254(e). Sumner v. Mata, 449 U.S. 539 (1981) (presumption applies to factual determinations of state appellate courts as well as state trial courts); West v. Seabold, 73 F.3d 81 (6th Cir. 1996); Loveday v. Davis, 697 F.2d 135 (6th Cir. 1983). Petitioner has come forward with no evidence to rebut the presumption that the factual finding of the Kentucky Supreme Court on this issue is incorrect.

Consequently, the Magistrate Judge concludes that the Kentucky Supreme Court correctly analyzed this issue. Petitioner has failed to establish that the Kentucky Supreme Court's resolution of this issue resulted in a decision (a) that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (b) that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. For these reasons, the Magistrate Judge concludes that Petitioner is not entitled to federal habeas relief on his claim that the trial court erred by denying his motion for a directed verdict.

**4.      Trial court's decision on sentencing**

Petitioner also claims that the trial court abused its discretion and denied him his right to jury sentencing when the trial court did not follow the jury's recommendation that all sentences run concurrently.

In considering this claim on the appeal of the denial of his RCr 11.42 motion, the Kentucky Court of Appeals evaluated this claim, as follows:

> Holsey's third issue involves a claim of abuse of discretion by the trial court for increasing his sentence to twenty years, despite a recommended total concurrent sentence of ten years by the jury. The reasons given by the court for not following the jury's recommendation were the methodical planning involved in the crimes, the serious nature of the offense, and the risk of danger to the victims. Curtis, Ethington, and Overby testified that the two robbers pointed the guns at them with one robber placing the shotgun on Overby's neck and threatening to kill him. A two-year-old child was also present in the living room during the robbery.
>
> First, we note that the issue generally is not properly preserved because it could and should have been raised on direct appeal rather than in the collateral proceeding under RCr 11.42. Second, it is well established that the trial court has no mandatory obligation to accept the recommendation of the jury on concurrent sentencing. An abuse of discretion occurs when a trial judge's decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. The trial court provided several reasons for declining to follow the jury's recommendation to run all the sentences concurrently. We are unpersuaded that the trial court abused its discretion. (footnotes omitted).

Roger Lee Holsey, Jr. v. Commonwealth of Kentucky, No. 2003-CA-000018-MR, (unpublished) pp. 23-24 (A24-A25).

Ignoring the fact that this claim was not properly preserved because it was not raised on direct appeal, this claim can be resolved by turning to KRS 532.055(2), which provides, in relevant part, as follows:

> (2) Upon return of a verdict of guilty or guilty but mentally ill against a defendant, the court shall conduct a sentencing hearing before the jury, if such case was tried before a jury. In the hearing the jury will determine the punishment to be imposed within the range provided elsewhere by law. The jury shall recommend whether the sentences shall be served concurrently or consecutively.

KRS 532.055(2).

The express language of KRS 532.055(2) states that the jury "recommends" whether sentences shall be served concurrently or consecutively. It is well settled in Kentucky that the trial court has no mandatory obligation to accept the recommendation of the jury on how multiple sentences should be served. *See Murphy v. Commonwealth*, 50 S.W.3d 173, 178 (Ky. 2001); *Swain v. Commonwealth*, 887 S.W.2d 346, 348-49 (Ky. 1994). As pointed out by the Kentucky Court of

14

Appeals, the trial court explained the reasons underlying the court's decision not to follow the jury's recommendation that all sentences run concurrently.

Additionally, petitioner's claim concerning sentencing is purely a claim relating to state statutory law and does not concern a matter of federal or constitutional law; therefore, this claim is not cognizable in a federal habeas corpus proceeding.

Consequently, the Magistrate Judge concludes that petitioner has not established that the decision of the Kentucky Court of Appeals in resolving the selective prosecution issue was a decision (a) that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (b) that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. For these reasons, the Magistrate Judge further concludes that petitioner is not entitled to federal habeas relief on his claim that the trial court erred by not following the jury's recommendation as to sentencing.

### III. CONCLUSION

For all of the reasons stated above, based on a review of the state court record and the applicable case law relevant to federal habeas corpus petitions, the Magistrate Judge concludes that Petitioner's habeas corpus petition should be denied.

Accordingly, **IT IS RECOMMENDED** that Petitioner's motion for summary judgment [DE #8] be **DENIED**, that Respondent's motion for summary judgment [DE #7] be **GRANTED**, that Petitioner's habeas petition be **DENIED**, and that this action be **DISMISSED and STRICKEN** from the docket.

The Clerk of the Court shall forward a copy of this Proposed Findings of Fact and Recommendation to the respective parties who shall, within ten (10) days of receipt thereof, serve and file timely written objections to the Magistrate Judge's Proposed Findings of Fact and Recommendation with the District Court or else waive the right to raise the objections in the Court of Appeals. 28 U.S.C. section 636(b)(1)(B); Thomas v. Arn, 728 F.2d 813 (6th Cir. 1984), affirmed,

474 U.S. 140 (1985); Wright v. Holbrook, 794 F.2d 1152, 1154-55 (6th Cir. 1986); Rule 8(b)(3), Rules Governing Section 2254 Cases in the United States District Courts; Fed.R.Civ.P. 6(e). A party may file a response to another party's objections within ten (10) days after being served with a copy thereof. Fed.R.Civ.P. 72(b).

This __26th__ day of June, 2006.

JAMES B. TODD,
UNITED STATES MAGISTRATE JUDGE